**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

RICHARD C. CARRIER, Ph.D., an
individual,

              Plaintiff,

      v.

SKEPTICON, INC., and LAUREN LANE,
an individual,

              Defendants.

Case No.: 4:19-cv-01059-JCH

**DEFENDANTS' MOTION TO DISMISS AND INCORPORATED**

**MEMORANDUM IN SUPPORT**

7356999

Defendants Lauren Lane and Skepticon, Inc (collectively, "Defendants"), move to dismiss this action. Plaintiff has failed to state a claim for which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6).   Carrier's Complaint establishes that his claims are time-barred, and Defendants are not liable to Plaintiff Richard Carrier for any statement.

## 1.0     **Introduction**

The Plaintiff in this action, Dr. Richard Carrier, describes himself as a well-known lecturer, teacher, and author of several notable works.[1] *See* Complaint, Dkt. No. 1, at p. 4, ¶15. Dr. Carrier holds a Ph.D. in the history of philosophy and his teachings focus on atheism, feminism, and "secularism." *Id.* at p. 3, ¶ 4.  He professes, in his Complaint, to be a practicing polyamorist. *Id.* at p. 5, ¶ 20.  He raises this strange fact in his Complaint because it appears to be his excuse for engaging in multiple acts of misconduct, the discussion of which he prefers to censor through this lawsuit.[2]

Carrier has admitted to instances of inappropriate behavior with young students who attend his lectures.   However, now that he has been criticized for his conduct, he seeks to censor discussion of that conduct.  For example, he admitted, under oath, that he sexually propositioned a young student after one of his lectures at Arizona State University.[3]  He also admitted that he does not think there is much of a difference between asking someone on a date and asking someone to have sex with him.[4]  And, he has admitted (by accident) that he hit on other students after his

---

[1] Defendants adopt these facts.  As a public figure, Plaintiff must demonstrate actual malice, instead of mere negligence, to prevail on a claim of defamation. *See New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 279-280 (1964).

[2] Defendants pass no judgment on whatever Carrier's sexual practices may be in the privacy of his own home.  However, Defendants have a right to expect that Carrier will refrain from inappropriate activity with young students at conferences, when that is one of the clearly enumerated rules at those conferences.  This case never would have come about had Carrier followed these simple and reasonable rules.  Carrier himself confesses to violating these rules. See **Exhibit 1**, Deposition of Richard Carrier (Carrier Dep.) at p. 45 at ¶ 1-20. Dr. Carrier's deposition transcript is part of the public record and its authenticity is not disputed.  *See Carrier v. FreethoughtBlogs Network et al.*, S.D. Ohio 2:16-cv-00906-MHW-EPD (2016) at Dkt. No. 41.

[3] *See* Carrier Dep. at 82, ¶12-15.

[4] *See* Carrier Dep. at 37 at 8-15.

talks, violating the Secular Student Alliance's (SSA) policies regarding engaging with young students, a policy he admits he disregarded.[5]

However, he now sues Defendants in this action for reporting to their conference attendees that they no longer wish for Dr. Carrier to be a speaker at Skepticon due to reports about Carrier's conduct – conduct that Carrier has already admitted to under oath.

## 2.0    Statement of Relevant Facts

Carrier is a well-known speaker on atheism who lost his membership to the Secular Student Alliance Speakers' Bureau because he admitted that he broke their explicit policy regarding hitting on young students.  Carrier refuses to take responsibility for his actions, and wishes instead to blame Defendants for reporting to their attendees why they no longer invited Carrier to be a speaker at Skepticon.

Defendant Skepticon is a 501(c)(3) secular convention that takes place in Missouri. Defendant Lauren Lane is a co-founder of Skepticon. Complaint Dkt. No. 1 at ¶ 5. On or about June 20, 2016, Skepticon allegedly published a post ("Blog Post") on its website entitled, "Keeping Skepticon Safe: Richard Carrier To Be Banned." Dkt. No. 1 at ¶ 7, and Dkt. No. 1-1. The Skepticon website attributes Lauren Lane as the author of the Blog Post. Plaintiff claims that the Blog Post was false and defamatory. He objects to the statement that Dr. Carrier engaged in "repeated boundary-pushing behavior". Dkt. No. 1 at ¶ 23. The full, unedited sentence reads: "While he was a featured speaker for many years, we stopped inviting him to speak partly because of his repeated boundary-pushing behavior, including towards someone involved in Skepticon." *Id.* at ¶ 21 and Dkt. No. 1-1.

Carrier also alleges that on September 1, 2016, specific statements that Skepticon and Lauren Lane's previous attorney, Harmeet Dhillon, sent *in a response letter* to Carrier's cease-and-desist letter are defamatory and attributable to the Defendants. Dkt. No. 1 at ¶ 26 and Dkt. No. 1-2 ("Attorney Letter").  Carrier claims that several statements in the Attorney Letter are

---

[5] *See* Carrier Dep. at 84-85, wherein he admits that he thought a different student complained about his sexual advances to the SSA.

defamatory, namely that Carrier engaged in "sexual harassment…towards someone involved in Skepticon," and that he made "unwanted sexual advances toward" someone involved with Skepticon. The full text states:

> To the extent the Post accuses Dr. Carrier of sexual harassment "towards someone involved in Skepticon," this is true, and will be proven in court, if necessary. Ms. Lane will testify about the many occasions on which Dr. Carrier made unwanted sexual advances towards her, including but not limited to touching her knees and hugging her without permission; leering at her; asking her inappropriate questions; and making harassing and sexually-charged comments about and towards her.

See Dkt. No. 1 at ¶ 28 and Dkt. No. 1-2.

Carrier filed suit in Ohio on September 20, 2016 ("Ohio Suit"). *See id*. Among the seven defendants in that litigation were Ms. Lane and Skepticon. *See id*. Ms. Lane, Skepticon, and the other defendants moved to dismiss on December 1, 2016 for lack of personal jurisdiction. See Ohio Suit, at Dkt. No. 10, attached hereto as **Exhibit 2**. Following jurisdictional discovery, on November 14, 2018, the Southern District of Ohio granted the motion and dismissed the action. See Ohio Suit, at Dkt. No. 43, attached hereto as **Exhibit 3**.

Carrier admits that he engaged in behavior that a reasonable person could call "boundary-pushing behavior" given that he admits that he propositions young women who attend his lectures for sex. Carrier Dep. at 82, ¶12-15, *supra*.  Other women published statements regarding Carrier's sexual harassment, and at least one of the women did so prior to the Blog Post.  For example, there was at least one first-hand report of sexual harassment publicly available online prior to the Blog Post. See June 15 Facebook post from Amy Frank, attached to the Complaint in the Ohio Suit at Dkt. No. 1, Exhibit 4, attached hereto as **Exhibit 4**.  Another woman published an article regarding additional first-hand reports of Carrier's sexual harassment toward women at conferences. See Ohio Suit at Dkt. No. 1, Exhibit 2 attached hereto as **Exhibit 5**.  Carrier knows about these other allegations because he unsuccessfully sued the women who published these articles as part of the Ohio Suit. Carrier omitted these facts from the instant Complaint in bad faith. Carrier's lawsuit cannot survive because he has filed it long after the statute-of-limitations in Missouri passed and

his action cannot be saved. Further, Carrier's lawsuit against the Defendants is implausible given that he has admitted to the behavior the Defendants complained about and Defendants reported on other published first-hand accounts of his misconduct.

**3.0     Legal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   Further, "[i]n reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court is not precluded in its review of the complaint from taking notice of items in the public record." *Levy v. Ohl*, 477 F.3d 988, 990 (8th Cir. 2007). In Missouri, "court records are public records." *Id.* The facts pleaded in the Complaint and noticeable documents and records combine to show that Plaintiff's claim is not plausible.

**4.0     Analysis**

**4.1     The Claim is Time-Barred**

Plaintiff acknowledges that he filed his Complaint outside the two-year statute of limitations recognized in Missouri. Dkt. No. 1 at ¶ 51 *citing* Mo. Rev. Stat. § 516.140 ("Missouri Statute of Limitations"). A party is permitted to use a Rule 12(b)(6) motion as a vehicle to challenge a complaint on statute of limitations grounds where the complaint itself establishes that the claim is time-barred.  *See Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011).  In Missouri, the statute-of-limitations for defamation begins to run, "not when the defamatory statement was made, but when damages were ascertained." *See Thurston v. Ballinger*, 884 S.W.2d 22, 26 (Mo. Ct. App. 1994). "Damages are ascertained when the fact of damage appears, not when the extent or the amount of the damage is determined." *Thurston*, 884 S.W.2d at 26, *citing Newton v. B.P.S. Guard Servs., Inc.*, 833 S.W.2d 14, 16 (Mo. App. 1992) and *Title Ins. Co. of Minnesota v. Construction Escrow Serv., Inc.*, 675 S.W.2d 881 (Mo. App. 1984).

In *Thurston*, the Missouri Court of Appeals ruled that when the Plaintiff both 1) learned of the defamatory statement and 2) had, "begun to suffer the loss of business", is when the "fact

7356999                                              4

of damages appears" and thus that is when the "statute of limitations began to run." *Thurston*, 884

S.W.2d at 26. Here, Carrier's claims are time-barred. The alleged defamation occurred in June

2016. Carrier sent a cease and desist letter to Ms. Lane and Skepticon on July 26, 2016. *See* Ohio

Suit, Dkt. No. 1-8, attached hereto as **Exhibit 6**. In Carrier's cease and desist letter, Carrier states

unequivocally that he will sue Lane for damages if she does not retract her statement. *See* **Exhibit**

**6** at pg 5. On September 20, 2016, Carrier filed his Complaint in the U.S. District Court for the

Southern District of Ohio where he claimed that Ms. Lane and Skepticon's statement had caused

damage to his reputation, and he attached evidence to show that that he allegedly lost business due

to Ms. Lane and Skepticon's Blog Post. *See* Ohio Suit Dkt. No. 1, attached hereto as **Exhibit 7**,

throughout, including Carrier's statement at pg. 30, ¶ 109:

> As a direct and proximate result of the aforementioned acts by Defendants, the
> Plaintiff has suffered substantial monetary damages, including damages to his
> personal and professional reputation and career, and substantial injury, damage,
> loss, harm, anxiety, embarrassment, humiliation, shame, and severe emotional
> distress in an amount that has not yet been fully ascertained.  As a direct and
> proximate result of the aforementioned acts by Defendants, the Plaintiff has been
> damaged and will be damaged in an amount to be proven at trial.

Accordingly, Carrier claimed that he had ascertained damages caused by the alleged

defamatory statements in the Blog Post and the Attorney Letter long before he filed his September

20, 2016 Complaint in Ohio. However, even utilizing the filing date as the outside date on which

he ascertained his alleged damages, Carrier filed this action on April 29, 2019, a full 2 years and

7 months after he filed the Ohio Suit, long after the Missouri Statute of Limitations ran.

Carrier offers no valid basis under Missouri law why his current Complaint is timely.

Instead, he argues that Ohio law, including its one-year saving statute, should apply. Dkt. No. 1 at

¶ 49-51, *citing* Ohio Rev. Code § 2305.19(A)("Ohio Statute") and Mo. Rev. Stat. § 516.230

("Missouri Savings Statute"). Plaintiff also attempts to invoke equitable tolling. Dkt. No. 1 at ¶ 52.

Plaintiff is wrong as a matter of law.

In diversity cases, this Court applies Missouri's choice of law rules. *Am. Guar. & Liab.*

*Ins. Co. v. United States Fid. & Guar. Co.*, 668 F.3d 991, 996 (8th Cir. 2012) (indicating a federal

court sitting in diversity applies the forum state's choice-of-law principles). The first step is to

consider whether, "an actual conflict of law is demonstrated." *See Great Am. All. Ins. Co. v. Windermere Baptist Conference Ctr., Inc.*, No. 2:16-cv-04046-NKL, 2017 U.S. Dist. LEXIS 174890, at *9 (W.D. Mo. Oct. 23, 2017), *citing Prudential Ins. Co. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007). Here, there is an actual conflict—Missouri expressly does not permit a plaintiff to refile a case if it was dismissed previously, even though it was without prejudice, if that dismissal occurs after the Missouri statute of limitations runs, unless the Missouri Savings Statute applies to save the refiled action. As discussed below, the Missouri Savings Statute does not save this case because *it only applies to cases originally filed in Missouri.*

In the Ohio Suit, the Court found that Carrier could not show that the defendants, including Skepticon and Lauren Lane, had sufficient minimum contacts with Ohio, to comport with the constitutional due process exercise of personal jurisdiction, holding:

> Defendants made allegedly defamatory statements outside of Ohio, relating to conduct that occurred outside of Ohio, about an individual who moved to Ohio a few weeks before the statements were made.  In sum, there is no sufficiently substantial connection between any of the Defendants and Ohio to make the exercise of personal jurisdiction reasonable.

*Carrier v. FreethoughtNetworks Blog, et al.*, Case No. 2:16-cv-00906 (S.D. Ohio Nov. 14, 2018), slip op. at 26. The state selected "must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Wert v. McDonnell Douglas Corp.*, 634 F. Supp. 401, 405 (E.D. Mo. 1986), *citing Allstate Ins. Co. v. Hague*, 449 U.S. 302, 313 (1981). Here, it would be arbitrary and fundamentally unfair to subject the Defendants to Ohio law, where it was already determined that they lack significant contacts with that state.  The Court should apply Missouri law with respect to the statutes of limitations.

Even if Ohio law could constitutionally be applied, Missouri law should nonetheless be applied. Missouri follows the "most significant relationship" test from the Restatement (Second) of Conflicts of Laws § 145 for resolving choice-of-law questions in tort actions. *See Thompson by Thompson v. Crawford*, 833 S.W.2d 868, 870 (Mo. 1992). Missouri choice of law determinations look to the following factors: (1) the place where the injury occurred, (2) the place where the

7356999                                          6

conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties is centered. *See Am. Guar. & Liab. Ins. Co. v. United States Fid. & Guar. Co.*, 668 F.3d 991, 996 (8th Cir. 2012), *citing* Restatement 2d of Conflict of Laws, § 145 (2nd 1988). As to the first factor the Defendants had good reason to believe that Dr. Carrier lived in California at the time Skepticon published the statement, and the Southern District of Ohio agreed that they lacked significant contacts with Ohio. Similarly, as to the second factor, the conduct causing the injury occurred in Missouri because the Blog Post was made in Missouri and Plaintiff's prior counsel sent the Attorney Letter on behalf of residents of Missouri.

The third factor also favors Defendants because the Defendants believed that Dr. Carrier was a resident of California at the time the statements were made. Defendant Lauren Lane is domiciled in Missouri and Skepticon is a Missouri non-profit that does business in Missouri.  As for the fourth factor, the place where the relationship between the parties is centered is Missouri, because the statement is regarding the fact that Carrier will no longer be speaking at or attending Skepticon, a Missouri based conference that takes place in Missouri every year.

Thus, the Missouri Savings Statute applies to this case. The Missouri Savings Statute has been interpreted by the U.S. Court of Appeals for the Eighth Circuit to only save actions that were first commenced in Missouri, meaning that Plaintiff's Complaint fails.

The Missouri Savings Statute, Mo. Rev. Stat. § 516.230, states:

> If any action shall have been commenced within the times respectively prescribed in sections 516.010 to 516.370, and the plaintiff therein suffer a nonsuit, or, after a verdict for him, the judgment be arrested, or, after a judgment for him, the same be reversed on appeal or error, such plaintiff may commence a new action from time to time, within one year after such nonsuit suffered or such judgment arrested or reversed; and if the cause of action survive or descend to his heirs, or survive to his executors or administrators, they may, in like manner, commence a new action within the time herein allowed to such plaintiff, or, if no executor or administrator be qualified, then within one year after letters testamentary or of administration shall have been granted to him.

The Missouri Savings Statute, "Mo. Ann. Stat. § 516.230 (1952) applies ***only to cases originally filed in Missouri***." *Mizokami Bros. of Arizona, Inc. v. Mobay Chemical Corp.* 798 F.2d

1196 (8th Cir. 1986) (emphasis added); *see also King v. Nashua Corp.*, 763 F.2d 332 (8th Cir. 1985) (holding that Mo. Ann. Stat. § 516.230 does not apply where first action was filed outside Missouri.).  The Missouri Court of Appeals concurs with this holding.  *See Muzingo v. Vaught*, 887 S.W.2d 693, 697 (Mo. Ct. App. 1994)

Here, Carrier's claims are not saved by the Missouri Savings Statute since Plaintiff chose to first file in the wrong jurisdiction. The statute of limitations in Missouri for Carrier's claims expired long ago. Thus, Carrier's claims fail on the face of the Complaint and must be dismissed.

Plaintiff otherwise invokes the doctrine of "equitable tolling", citing *Dixon v. Gonzales*, 481 F.3d 324 (6th Cir. 2007).  Complaint at ¶49.  "Courts have generally reserved the remedy of equitable tolling for circumstances which were truly beyond the control of the plaintiff." *Ousley v. Rescare Homecare*, No. 4:13-CV-00898-SPM, 2013 U.S. Dist. LEXIS 160016, at *7 (E.D. Mo. Nov. 8, 2013), *citing Hill v. John Chezik Imps.*, 869 F.2d 1122, 1124 (8th Cir. 1989). "Equitable tolling is appropriate when the plaintiff, despite all due diligence, is unable to obtain vital information bearing on the existence of his claim." *Jenkins v. Winter*, No. 04-0966-CV-W-FJG, 2010 U.S. Dist. LEXIS 26097, at *23 (W.D. Mo. Mar. 19, 2010), *citing Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323, 1328 (8th Cir. 1995). Equitable tolling has its roots in fraud cases: "Where the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered[.]" *See Dring*, 58 F.3d at 1328 (internal citations omitted).

Although Carrier pursued his claim in Ohio during the limitations period, nothing prevented him from filing on time in Missouri. He was not prevented by being unable to obtain vital information regarding the existence of his claim: he sent a cease and desist letter to the Defendants within weeks of reading the Blog Post and he read the Attorney Letter in response to his cease and desist letter. Carrier chose to misfile in Ohio and continued to litigate there, despite being well-advised of the impropriety of filing there.  He was well aware of the jurisdictional and limitations issues before the Missouri time limit ran. *See* **Exhibit 8**, (Motion to Apply the Doctrine of Prospective Equitable Tolling filed in Ohio case, Dkt. No. 31).  He should have, at that time,

dropped his Ohio case, without prejudice, and then filed it here in Missouri. There was no fraudulent concealment or extraordinary circumstance: the choice to litigate in Ohio was fully within his control. Thus, equitable tolling does not apply and the litigation should be dismissed as time-barred.

### 4.2     The Complaint Lacks Plausibility

#### 4.2.1     Defamation

Even if it were not time-barred, the Complaint would fail for lack of plausibility because Plaintiff has failed to allege facts plausibly showing that the Defendants acted with actual malice in defaming Plaintiff. The claims also fail because the allegedly defamatory statements are true and/or opinions, and therefore not defamatory.

Plaintiff claims he is "well known to the public throughout the United States and the world", with a "commercially valuable" "public personality". *Id.* at ¶15. He cannot make such claims and then evade the conclusion that he is a public figure.

Plaintiff's standing as a public figure is significant because public figures have a higher burden to bring defamation claims. "A public-figure plaintiff must do more than prove falsity to prevail in a defamation claim. Even if the defendant's remarks are proven both defamatory and false, a public-figure plaintiff must also prove by clear and convincing evidence that the defendant acted with actual malice - that is, that the defendant made false remarks with a high degree of awareness of probable falsity, or that the defendant entertained serious doubts as to the truth of his publication." *Campbell v. Citizens for an Honest Gov't, Inc.*, 255 F.3d 560, 569 (8th Cir. 2001) (internal citation omitted).

In Missouri, "whether the allegedly libelous words are defamatory is a question of law which the court may decide on a motion to dismiss." *Klein v. Victor*, 903 F. Supp. 1327, 1330 (E.D. Mo. 1995). The allegedly defamatory words must be read in connection with the whole publication, rather than in isolation. *Id.*, *citing Missouri Church of Scientology v. Adams*, 543 S.W.2d 776, 777 n.2 (Mo. 1976).

7356999                                        9

Under Missouri law, the elements of a claim for defamation for a public figure are: (1) publication; (2) falsity; (3) publication with knowledge of its falsity or with reckless disregard for whether it was true or false at a time when defendant had serious doubts as to whether it was true; (4) the statement tended to deprive the plaintiff of the benefit of public confidence and social associations; (5) the statement was read by others; and (6) plaintiff was thereby damaged. *See Klein*, 903 F. Supp. at 1329. Further, "on top of the state-law tort of defamation, of course, is the first amendment, which protects freedom of expression and guarantees that issues of public concern may be freely and openly debated." *Id.*

First, "to determine whether the alleged defamatory statement is protected speech, the Court must, as a threshold matter, determine whether a reasonable factfinder could conclude that the statement implies an assertion of objective fact." *Id.* at 1331, *citing Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21 (1990). This Court has previously adopted the Ninth Circuit's distilled analysis of the *Milkovich* test as follows:

> As a starting point for our analysis, we adopted a three-part test: (1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates that impression, and (3) whether the statement in question is susceptible of being proved true or false.

*See Klein*, 903 F. Supp. at 1329, *citing Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995) and *Milkovich, supra*.

Plaintiff's Complaint alleges both Defamation Per Se and Defamation Per Quod. However, "Missouri courts no longer recognize separate causes of action for libel per se and libel per quod. *Klein*, 903 F. Supp. at 1329. The Defendants will refer to the tort of defamation only and will refer to the statements in the Blog Post and the Attorney Letter separately.

#### 4.2.1.1    The Blog Post

The statements that Carrier alleges are defamatory in the Blog Post are that the Plaintiff engaged in, "repeated-boundary pushing behavior" and that "attendees' well-being and comfort is put at an unacceptable risk by Carrier's presence[.]" Applying the *Milkovich* test, the general tenor of the entire work is that the Defendants are criticizing Plaintiff for actions he has already admitted

to engaging in. Carrier has admitted that he seeks out sexual encounters with young women and students at events, schools, and conferences that he speaks at. However, he does not like that the Blog Post suggests that some young women who attend Skepticon do not like being sexually propositioned by a lecturer at a conference. The terms "boundary-pushing behavior" and "well-being and comfort" are each subjective and cannot be proven false, these particular statements cannot be interpreted as objective fact, as every individual has their own boundaries, and standards for well-being and comfort. Second, the term "boundary-pushing behavior" and "well-being and comfort [being] put at an unacceptable risk by Carrier's presence" are figurative statements that indicate that the Defendants were asserting a negative opinion about Carrier's admitted behavior of sexually propositioning young women while lecturing at their conference. Thus, these statements cannot be defamatory.

The rest of the statements in the Blog Post are true. "[T]ruth is an *absolute* defense to a defamation claim. *Anderson v. Shade Tree Servs. Co.*, No. 4:12CV01066 ERW, 2013 U.S. Dist. LEXIS 104832, at *48 (E.D. Mo. July 26, 2013) (emphasis in original). First, Carrier has admitted that he has engaged in much of the behavior complained of in the Blog Post. Second, the Defendants had access to publicly available complaints of sexual harassment published by at least one other woman and talked to at least one other women with additional first-hand accounts prior to publication of the Blog Post. Carrier is aware of these other accusations because he unsuccessfully sued both women in the Ohio Suit, as discussed in more detail herein. Regardless, the "[m]ere proof of failure to investigate, without more, cannot establish reckless disregard for the truth in a defamation action." *McQuoid v. Springfield Newspapers*, 502 F. Supp. 1050, 1051 (W.D. Mo. 1980).

Carrier appears eager to divulge "his version" of the events in his Complaint.[6] See Dkt. No. 1 at ¶ 33-34. However, his version is in itself an admission that he engaged in sexual

---

[6] Carrier provides salacious details about Ms. Lane in his Complaint. For purposes of the motion to dismiss, "courts must take all of the factual allegations in the complaint as true, [but] they are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 662, 129 S. Ct. 1937, 1939 (2009).

misconduct with people involved in Skepticon, which shows that the second part of the statement, "partly because of his repeated boundary-pushing behavior, including towards someone involved in Skepticon" is factually true. As discussed above, while the term boundary-pushing is subjective, the phrase "including towards someone involved in Skepticon" is provably true: he engaged in sexual behavior with at least one person involved in Skepticon. Carrier is apparently upset that anyone dare criticize his actions or have an opinion regarding his actions. No liability can attach to this statement because his actions are factually true, and the rest of the statement is a critique of his actions.

Another part of the statement at issue is "partly because of his repeated" boundary-pushing behavior. Indeed, by the time Skepticon published its statement, at least one other woman had previously published a first-hand account of Carrier's sexual harassment. Amy Frank, a defendant in Carrier's original Ohio Suit, published her account of being sexually harassed and assaulted by Carrier in a Facebook post on June 15, 2016. *See* Ohio Suit Dkt. No. 1, Exhibit 4, incorporated by reference in the instant Complaint at ¶9, attached hereto as **Exhibit 4**. Further, another woman had been in contact with Skepticon organizers regarding complaints of sexual harassment, which she published on the same day as the Blog Post. *See* Ohio Suit Dkt. 1 at Exhibit 2, attached hereto as **Exhibit 5.** The second woman stated:

> I've spoken to a Skepticon organizer.  The pattern there is similar, except that the expressions of sexual interest were repeated, though more deniably after they weren't reciprocated.  I've also spoken with two other people who don't wish to come forward publicly.  Both have been on the receiving end of Carrier's unwanted interest. In both cases, he met their polite deferral of his interest with more blunt expressions of interest.  …

> At this point, I have to conclude that Carrier is highly resistant to changing his behavior.  He's received plenty of feedback.  Organizations and individuals have told him that what he's done is wrong.

*See* Ohio Suit Dkt. 1 at Exhibit 2, attached as **Exhibit 5**.

At the time Skepticon published the Blog Post, accounts from numerous sources had all pointed his behavior being offensive to a reasonable person, and that Carrier had defied requests that he cease the offensive behavior.  The Blog Post accurately reported these sources. And, as set

forth above, Carrier also testified under oath at his deposition in the Ohio Suit that he sexually propositioned a young student and made advances on other students, in violation of SSA policies. Because the complained-of statement is factually true, the Defendants are not liable for defamation.

### 4.2.1.2     The Attorney Letter

The Attorney Letter is protected by the litigation privilege, which is absolute. The Restatement 2d of Torts, § 586 (2nd 1979) states that, "[a]n attorney at law is absolutely privileged to publish defamatory matter concerning another in communications ***preliminary to a proposed judicial proceeding***, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." In Missouri, "it is well settled that defamatory matter uttered or published in the due course of judicial proceedings by any of the participants, whether judge, party, attorney or witness, is absolutely privileged and will not support a civil action for defamation[.]" *See Wright v. Truman Rd. Enters., Inc.*, 443 S.W.2d 13, 15 (Mo. Ct. App. 1969). Missouri courts have found that the litigation privilege, "extends to statements made '"preliminary to a proposed judicial proceeding."'" *Id.*, *citing* Restatement (Second) of Torts § 588 at 250 (1977). While *Wright* dealt with preliminary statements by witnesses, Missouri frequently looks to the Restatement of Torts for guidance, and here the authority pronounces statements made preliminary to a proposed judicial proceeding are privileged absolutely.

Further, an action for defamation requires publication of the allegedly defamatory matter to one other than the defamed person. *Halsell v. Kimberly-Clark Corp.*, 683 F.2d 285, 287 (8th Cir. 1982). There was no publication of the Attorney Letter given that Carrier was the intended recipient of the letter. The Defendants did not publish the Attorney Letter nor intend or suppose that a third party would come to read it. *See Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 70 (Mo. 2000) (en banc) (addressing self-publication). Thus, absent publication, Carrier's claims regarding the Attorney Letter fail.

Assuming arguendo that the litigation privilege does not apply here and publication to a third party is not required, Carrier's allegations that the statements in the Attorney Letter are defamatory fail for all the reasons analyzed in relation to the Blog Post, as the Attorney Letter only addresses the statements made in the Blog Post. Specifically, the letter asserts that the allegations are true, that Carrier admitted that he engaged in sexual misconduct with students and attendees, that the Blog Post reported on other allegations of misconduct, and that the Blog Post criticizes Carrier for these actions.  Thus, for all the reasons the Blog Post is not actionable, the Attorney Letter similarly is not.

### 4.2.2    Carrier's Additional Claims

Carrier's claim here is based on alleged defamation, and, "under Missouri law, the tort of intentional infliction of emotional distress does not lie when the offending conduct consists only of a defamation." See *Hutchinson v. DaimlerChrysler Corp.*, No. 4:05-CV-2091 CAS, 2007 U.S. Dist. LEXIS 43225, at *55 (E.D. Mo. June 14, 2007), *citing Nazeri v. Mo. Valley Coll.*, 860 S.W.2d 303, 316 (Mo. 1993)(internal citations omitted). Here, Carrier's claim is related only to defamatory statements, and Missouri does not allow double recovery, thus, this claim must be dismissed.

As to the claim for negligent infliction of emotional distress, negligence requires the plaintiff establish that the defendant had a duty to protect the plaintiff from injury, the defendant failed to perform that duty, and the plaintiff's injury was proximately caused by the defendant's failure. See *Jarrett v. Jones*, 258 S.W.3d 442, 448 (Mo. 2008) (en banc) (cited case omitted). Claims seeking recovery of damages for the negligent infliction of emotional distress also require proof of "two additional elements: (1) the defendant should have realized that his conduct involved an unreasonable risk of causing distress and (2) the emotional distress or mental injury must be medically diagnosable and must be of sufficient severity so as to be medically significant." *Id.* (*citing Bass v. Nooney Co.*, 646 S.W.2d 765, 772-73 (Mo. 1983) (en banc)). Again, Plaintiff does not plead that Defendants had a duty to protect him from injury and he does not plead a diagnosable mental injury of sufficient severity so as to be medically significant. Thus, his claim for negligent infliction of emotional distress must be dismissed.

**5.0**  **Conclusion**

For the foregoing reasons, Plaintiff's complaint should be dismissed with prejudice.

Dated this 8th day of July 2019.

Respectfully Submitted,

THOMPSON COBURN LLP

By: /s/ Michael L. Nepple
Michael L. Nepple, MO 42082
Jonathan G. Musch, MO 55200
One U.S. Bank Plaza, Suite 2700
St. Louis, Missouri 63101
Phone: (314)552-6000
mnepple@thompsoncoburn.com
jmusch@thompsoncoburn.com

and

ANDAZZA LEGAL GROUP, PLLC
Ronald D. Green, *PHV forthcoming*
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Phone: (702)420-2011
ecf@randazza.com
*Attorneys for Defendants*
*Skepticon, Inc. and Lauren Lane*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the following was filed with this Court's CM/ECF

system on Monday, July 8, 2019, which shall serve a copy on all counsel of record who are deemed

to have consented to electronic service as well as mailing a copy via First Class Mail to: 134 West

Tulane   Rd.,   Apt.   B,   Columbus,   OH   43202-1943   and   emailing   a   copy   to

Richard.carrier@icloud.com.

/s/ Michael L. Nepple