RECEIVED
JUL 15 2019
BY MAIL

THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| Richard C. Carrier, Ph.D., an individual<br><br>Plaintiff,<br><br>v.<br><br>Skepticon, Inc., and Lauren Lane, an individual,<br><br>Defendant. | Case No. 4:19-cv-01059-JCH<br><br><br>**RESPONSE TO DEFENDANTS' MOTION TO DISMISS, WITH INCORPORATED MEMORANDUM** |

It is important to remember that Defendants made claims *additional* to those of other parties, and are being sued for *those* claims, and evidence at trial and pled in Plaintiff's Complaint will show the Defendants knew those additional claims to be false when they published them, which satisfies the requirements of defamation even of a public figure.

As to the statute of limitations, the original cause of action in this case was commenced within Missouri's statute of limitations, and had it been filed in

1

Missouri it would have been in accordance with all pertinent Missouri laws. Precedents aside, no actual law says actions commensurate with Missouri law must be barred from its savings statute (Mo. Rev. State § 516.230), which statute makes no mention of an exclusion for actions commenced in another state, and at most presumes only that an action previously commenced satisfy Missouri law, as in this case Plaintiff's action in Ohio did, by being commenced within Missouri's statute of limitations and not in contravention of any Missouri law, warranting equitable tolling in this case.

Plaintiffs in interstate disputes have a right to a fair trial on matters in contest, and courts should not interpret statutes so narrowly as to deprive citizens of their rights, particularly for correctable technical defects, or for any reason other than the merits and compliance with existing laws.

It is thereby here contended that the Defense's motion should be dismissed.

**1. Defense Misrepresents the Substance of This Case**

This case is not about whether the Plaintiff "hits on" students or other adult persons. Were that all the Defendants' alleged, no lawsuit would have been brought in this matter. The subject matter of this action is solely as stated in the Complaint (Dkt. 1), §23:

> False and defamatory statements ... include, but are not limited to, the assertion that Dr. Carrier engaged in "**repeated** boundary-pushing behavior" at Skepticon or with anyone associated with Skepticon, and that Skepticon, Inc., "stopped inviting [Dr. Carrier] to speak partly **because of**" the alleged incidents "including towards someone involved in Skepticon," alleging multiple incidents, and alleging the intention as early as 2013 to exclude the Plaintiff's presence at Skepticon for this reason, and the assertion that "attendees' well being and comfort is **put at an unacceptable risk by Carrier's presence ...**"

As evidence will show at trial, Dr. Carrier's conduct at Skepticon was fully in accord with or not violative of Skepticon's own policies and indeed was initiated by and with the enthusiastic consent of Defendant Lauren Lane, then and now President of Skepticon, Inc., and organizer of conferences pertinent, who is now making false accusations regarding his conduct with her and at Skepticon conferences that are provably false.

What is defamatory are the false claims that: (1) Dr. Carrier **repeated** behavior he was told was unaccepted or unacceptable, as opposed to respecting the wishes and consent of others involved as in fact Dr. Carrier has done at all

3

times; (2) that he was in prior years publicly disinvited from Skepticon **for that reason**; (3) and that his behavior poses an **unacceptable risk** to Skepticon attendees' "well being and comfort" (which "risk" was not established, under Skepticon's policies, merely by asking attendees' consent to discuss sexual or romantic interest with them).

Also defamatory, per Complaint (Dkt. 1) §29, are the allegations that Dr. Carrier violated the Skepticon conference's "sexual harassment" policy, when either no pertinent behavior occurred at Skepticon and thus was not subject to that policy or else no pertinent behavior ever occurred or continued without the other party's consent and thus did not violate Skepticon's policy, which fully allowed consensual expressions of sexual interest (per below), and indeed respectful expressions of such were encouraged by conference staff (including Lane), and in official workshops (such as one conducted by Miri Mogilevsky at the 2013 Skepticon on how to ask people out at conferences). If the Defendants are now claiming they never accused the Plaintiff of violating Skepticon's sexual harassment policy, that that was not the communicated intent of their public blog post, let them now declare it in their Reply.

The true facts of what happened are as stated in Complaint (Dkt. 1), §30-36. That they also referenced the defamation of other parties was not "omitted" but specifically referenced in Complaint (Dkt. 1), §9. That the Defense is attempting

4

to "change the subject" in an inflammatory way to attempt to win the Court's sympathy is indicative of their untrustworthiness in this matter in general and Plaintiff respectfully requests that that fact be taken into account when weighing the merits of their assertions in respect to this motion.

### 2. The Claim Should Not Be Time-Barred

The Plaintiff here adopts, re-alleges, and incorporates by reference everything he already argued in respect to this question in his Complaint (Dkt. 1), §48-58, as if they were set forth in full herein and further argues as follows.

Defense argues "it would be arbitrary and fundamentally unfair to subject the Defendants to Ohio law, where it was already determined that they lack significant contacts with that state," but both the Missouri and Ohio savings statutes exist for precisely such circumstances: commencing an action that is subsequently found to have been filed in the wrong court, or to have suffered any correctable error that does not result in a judgment on the merits or dismissal with prejudice. Indeed there is no conflict of law in this matter between these states. All plaintiffs have a right to seek justice, and it would be arbitrary and unfair to bar them doing so when their actions have been fully in accord with the law in both states and erred only in respect to choice of venue, a correctable

5

defect. The complaint in Ohio was filed within Missouri's statute of limitations, and in compliance with applicable Missouri laws, ergo it should be preserved.

It is also not true that "nothing prevented" the Plaintiff "from filing on time in Missouri," as he was not legitimately aware of the invalidity of an Ohio jurisdiction until the court's ruling on the matter, and it is unduly burdensome to diversity plaintiffs and the courts that they be always required to file multiple simultaneous lawsuits in multiple states, doubling or even tripling effort, time, and expense. It is prima facie reasonable that a citizen of Ohio should have a cause of action in Ohio against parties acting in concert across several states to defame him, for (a) Ohio has an interest in protecting the rights of its citizens, (b) diversity jurisdiction often recognizes such a choice of venue, and (c) Plaintiff had well-pled reasons to believe the Defendants all knew or should have known he resided in Ohio when they defamed him or explicitly targeted his Ohio business relations. See *Carrier v. FreethoughtBlogs Network et al*, Dkt. 17, a true and correct copy of which is here attached as **Exhibit 1** (only with original docket headers removed for the convenience of the present court), and Dkt, 40, a true and correct copy of which is here attached as **Exhibit 2** (only with original docket headers removed for the convenience of the present court).

Acting in good faith and under the advice of his counsel at the time, Plaintiff genuinely believed he had a good argument for preserving the Ohio jurisdiction

6

and could not have known in advance how the court would rule on it, and took all actions legally and financially available to him while seeking that judgment to establish equitable tolling of the statute of limitations. Accordingly it would be contrary to and subverting of the Plaintiff's rights to disallow Missouri's savings statute from applying to an action commenced in good faith in another state that nevertheless satisfied all the requirements explicitly stated in Missouri law.

Precedent actually can support this conclusion. In *King v. Nashua Corp.*, 587 F. Supp. 417 (E.D. Mo. 1984), the only precedent on which every other court has ultimately relied in this regard, it was ruled only that "the Missouri statute of limitations" will not "be tolled by the Missouri non-suit statute" when "the plaintiff did not file in Illinois by innocent mistake or good faith," citing in turn *Phillips v. Whittom*, 192 S.W.2d 856 [Mo. 1946] as precedent, in which tolling was denied to a plaintiff owing to his "patent negligence and want of diligence," neither of which describes the Plaintiff now. As this Plaintiff filed a joint suit in good faith in Ohio and was determined only to have lost that jurisdiction by innocent mistake, *King* would appear to support equitable tolling in this case. For in *King* tolling was only denied because there "appears no reason for this error," whereas in the present case there is a manifest reason for this error. Indeed in *King*, the plaintiff had voluntarily dismissed his out-of-state case, which is not analogous to the present case, where dismissal was forced on the Plaintiff by an unexpected adverse

7

judgment from the court regarding an unforeseeable technical error. Indeed, *Phillips v. Whittom*, 192 S.W.2d 856 (Mo. 1946), cited in *King*, declares "the negligent bringing of a void action will *not* toll the statute of limitations if the plaintiff's negligence be great enough," citing in turn previous cases where "it is there indicated the negligence must be gross." There has been no negligence in this case, gross or otherwise.

Accordingly, Defense's citation of *Mizokami Bros. of Arizona, Inc. v. Mobay Chemical Corp.* [798 F.2d 1196 (8th Cir. 1986)] is inapposite, as *Mizokami* merely cites *King*, so the reasoning in *King* must govern. Which reasoning, per above, supports Plaintiff's receiving the benefit of Missouri's savings statute under equitable tolling in the present case. This is not without precedent, as explained in *Muzingo v. Vaught*, 887 S.W.2d 693 (Mo. Ct. App. 1994), which cites and quotes eight examples of savings statutes preserving lawsuits originally filed outside a state (Ibid. at 696). Plaintiff contends the reasonings given there are all apposite here.

Though the *Muzingo* court ultimately decided against these precedents, Judge C.J. Shrum wrote a dissenting opinion thereto (Ibid. at 697-699), cogently arguing exactly what Plaintiff believes should be the correct decision in cases like his own. Shrum observes that for all citable precedents there is never given "any reasoned explanation for such a rule" against applying the savings statute to

8

suits previously filed in another state, and indeed with this remark specifically repudiating the *Mizokami* court ruling on which Defense relies. Shrum further concludes that "fundamental fairness and basic justice require that litigants, such as the Muzingos, have their claims tried and decided on their merits and not disposed of on a procedural technicality." Plaintiff concurs.

It is here added that by Defense's own argument, "Missouri choice of law determinations look to the following factors: (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, [and] (3) the domicile, residence, … of the parties." Regardless of anyone's belief, the Plaintiff actually resides in Ohio and actually resided in Ohio when Defendants defamed him; and Ohio is where a substantial amount of injury occurred, as that is where the Plaintiff resides and receives his income and suffered damage to Ohio business relationships. If Defendants in Missouri had fired a homing missile at the Plaintiff thinking it would strike him in California but it actually struck him in Ohio, it would be perverse to conclude they were exempt from Ohio law in the matter. And if nevertheless courts so ruled, indeed to that plaintiff's surprise, being for reasons obscure to him and even his lawyer, it would be even more perverse to deny that plaintiff their right to refile in what law deems a suitable venue; which would not be California, but Missouri.

9

Finally, the Plaintiff appeals to his Constitutional rights in this matter, which per Article VI, Clause 2, "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Article IV, Section 1 declares "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." By which principle the Missouri savings statute 516.230 must give full faith and credit to a good faith proceeding in Ohio that otherwise satisfies the statute as written; therefore Missouri must recognize the Ohio action as commenced. The 14th Amendment further declares that "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States," and per Shrum, a mere judicial precedent establishing without constitutional principle an unlegislated rule barring a plaintiff's rights under the plain wording of Missouri law and even Ohio and Federal law should be unconstitutional. Said Amendment also declares, "nor shall any state … deny to any person within its jurisdiction the equal protection of the laws." A citizen of Ohio should be as protected by Missouri laws as any citizen of Missouri for actions arising in Missouri. Indeed, Ohio and Missouri *both* have essentially the same savings statute, establishing the same right, so under what other conditions can Plaintiff find relief if *both* are said not to apply to him?

The Missouri savings statute and equitable tolling should therefore apply.

### 3. Proving Falsity and Actual Malice

The Plaintiff here adopts, re-alleges, and incorporates by reference everything he already argued in respect to this question in his Complaint (Dkt. 1), §30-36, as if they were set forth in full herein. Which pleadings demonstrate the actual malice standard here stands a reasonable chance of being met at trial. Plaintiff further argues as follows.

Defense alleges "well-being and comfort" are each subjective and cannot be proven false, but this is not relevantly true in this case, as this question was already decided by Skepticon's own published policies at the time: it cannot be presumed that behavior that *comports* with their written and disseminated polices can be adjudged as a threat to attendees' "well-being and comfort" because the policies Skepticon wrote specifically serve the aim of defining what Skepticon deems as posing such a threat. A true and correct copy of Skepticon's 2012 Harassment Policy taken without alteration from The Internet Archive (https://archive.org), which applied to all years relevant, is here attached as **Exhibit 3**. It states the conference "does encourage an environment of sex positivity where sex and sexuality are discussed" and directs attendees to seek consent for all interests. Consequently, seeking and respecting consent does not violate but obeys their policy. Defendants cannot now claim that would be sexual

11

harassment or "misconduct" even by Skepticon's own officially stated standards, nor that such compliance with policy constitutes a risk to well-being or comfort.

Likewise repeating behavior that pushes stated boundaries is a factual question, not opinion. Whether anyone stated a boundary, and Plaintiff persisted in spite of it, is a question of fact. If the Defendants wish to affirm in their Reply that *they did not mean* Richard Carrier had continued any behavior against any boundary he was informed of, then their statement on *that* point can be construed as not defamatory, but then their allegation of his violating their sexual harassment policy is then admitted by them to be false and *is* therefore defamatory, because it did not prohibit asking for consent nor described asking for consent as "boundary pushing" (much less as a threat to "well-being and comfort") but in fact specifically mandated consent-seeking as a condition of compliance with the policy. Therefore the Defense is caught in a Catch-22: no matter what it affirms here, at least one of the Defendants' statements is thereby admitted to be knowingly false and thus defamatory.

It is also false that Plaintiff's account of events in Complaint (Dkt. 1, §30-36) constitutes "an admission that he engaged in sexual misconduct with people involved in Skepticon" because under Skepticon policy at the time nothing he actually did is "misconduct" under it. Again, this case is not about whether the Plaintiff sought and respected consent at Skepticon, or engaged in mutually

12

consensual behavior there; this case is about the knowingly false allegation that he disregarded consent at Skepticon. It is the latter that is defamatory and the subject of this suit, not the former.

It is also immaterial for the purposes of this motion that Amy Frank had previously made accusations against the Plaintiff unrelated to Skepticon. Repeating defamatory statements is still defamation. But more importantly, Frank was not a Skepticon attendee and nothing pertaining to her involved Skepticon. The defamatory statements alleged in Plaintiff's Complaint pertain to behavior at Skepticon, and with persons attending or connected to it. If all Defendants had done was relate Frank's complaint and given that as their sole reason for their actions and publication, they would not have been the subject of any lawsuit. The Defendants are being sued for adding *further false allegations*, as described in the Complaint, not merely for repeating Frank's. Which additions include the false claim that the Plaintiff was *previously* disinvited for this reason, which the Defendants know to be false, as they had no such knowledge at that time.

As to the statement, regarding the Plaintiff and persons unconnected with Skepticon, that "he met their polite deferral of his interest with more blunt expressions of interest" (communicated only second hand by another party, not Skepticon or Lane), this does not support any claim that Dr. Carrier violated Skepticon policy, which only applies at Skepticon, or that he was previously

13

disinvited from Skepticon for that reason (as no one involved with Skepticon knew of such things at that time either), nor does it support any claim that he continued any behavior he was told was unwanted, as the word "deferral" is deliberately ambiguous, describing even the absence of any clear statement as to the matter, upon which asking consent before continuing would then be required, not prohibited, even by Skepticon's own policies.

Again, merely stating that the Plaintiff asks for consent would not have been defamatory; and if the Defendants wish to declare now that they meant nothing else by any of their assertions regarding him, let them do so in their Reply. Otherwise, Defendants are affirming they did not mean merely that Dr. Carrier asks for consent, but that he disregards consent (a requirement of violating even Skepticon's sexual harassment policy), which allegation *is* defamatory. Likewise, this is not about Defendants merely repeating others' defamatory statements, but adding their own, to wit, that the Plaintiff sexually harassed Lauren Lane and unnamed "others" at Skepticon, that he had in a previous year been disinvited for that reason, and that he repeatedly pushed stated boundaries with persons at or associated with Skepticon. All of which the evidence shall prove at trial Defendants knew to be false when they published them.

Accordingly, Defense's motion to dismiss for these reasons as well should be denied.

14

DATED this 12th day of July, 2019.

Respectfully submitted,

Richard C. Carrier (pro se)
134 W. Tulane Rd. Apt. B
Columbus, OH 43202-1943
(510) 932-9536
richard.carrier@icloud.com

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and accurate copy of the foregoing was served upon Defense counsel Michael Nepple, both by email at mnepple@thompsoncoburn.com and by regular mail at Thompson Coburn LLP, One US Bank Plaza, St. Louis, MO 63101, on 12 July, 2019.

Richard C. Carrier (pro se)