UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

RICHARD C. CARRIER, Ph.D.,
an individual,

    Plaintiff,

  v.

SKEPTICON, INC., and
LAUREN LANE, an individual,

    Defendants.

Case No.: 4:19-cv-01059-JCH

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

Defendants Lauren Lane and Skepticon, Inc. ("Defendants") hereby file their Reply in support of their Motion to Dismiss the Complaint filed by Plaintiff Dr. Richard Carrier ("Dr. Carrier" or "Plaintiff").

**Memorandum of Points and Authorities**

**1.0   Introduction and Statement of Relevant Facts**

Four years ago, a blog post 1) made on a Missouri non-profit's website, 2) by Missourians, 3) about conduct that (in part) occurred at a convention in Missouri criticized overt, unwelcome sexual harassment committed by Dr. Richard C. Carrier, a famous author and lecturer.  Carrier admitted to this behavior both under oath *and* in his Complaint.  Dr. Carrier's Opposition contains his personal interpretation of the statements in a June 20, 2016 blog post (the "Blog Post"). However, Dr. Carrier's interpretation of the Blog Post enjoys no deference, for whether a communication is capable of conveying a defamatory meaning is a question of law.  Dr. Carrier's rhetoric should be ignored.  The undisputed facts, Dr. Carrier's admissions, and governing case law mandate dismissal.

**2.0   The Claim is Time-Barred**

Dr. Carrier concedes that he filed outside of the Missouri statute-of-limitations.  Instead, he argues that "precedents aside" there is no support for the claim being dismissed. *See* Resp., Dkt. No. 7, at 2. The parties and this Court may not ignore controlling case law by simply saying "precedents aside." Carrier filed his first Ohio lawsuit[1] within the Missouri statute-of-limitations, (Resp. at 1), but this new case was not.  Thus, this Court need only decide whether Dr. Carrier's late claims can be saved by the Missouri Savings Statute, equitable tolling, or Ohio law. They cannot, and this action should be dismissed.

---

[1] *Carrier v. FreethoughtBlogs Network et al. Opinion* (ECF No. 6, Ex. 3), cited throughout Dr. Carrier's Complaint, Defendant's Mot. to Dismiss, and Plaintiff's Resp. to Defendant's Mot. to Dismiss ("Ohio Suit"). Following the dismissal of the first Ohio action, Carrier refiled in Ohio against certain defendants.

1

**2.1 Ohio Law Does Not Apply**

Dr. Carrier's claims cannot be saved through application of Ohio's savings statute (Ohio Rev. Code § 2305.19(A)) ("Ohio Statute"). First, Ohio law, and the Ohio Statute, do not apply. Missouri's choice of law rules are applied by this Court because there is an actual conflict between the Ohio Statute and Mo. Rev. Stat. § 516.230 (the "Missouri Savings Statute"). The actual conflict occurs because the Missouri Savings Statute only applies to cases originally filed in Missouri. *Mizokami Bros. of Ariz., Inc. v. Mobay Chem. Corp.,* 798 F.2d 1196 (8th Cir. 1986). Thus, the Missouri Savings Statute cannot be used to save this action. This binding precedent is dispositive and mandates dismissal of this lawsuit.

Dr. Carrier argues that there is no conflict of law because both Missouri and Ohio have savings statutes, and that both exist for the same purpose. *See* Opposition at 5. Further, Carrier's constitutional argument (Resp. at 10) – that the two laws are not in conflict because they serve the same purpose – ignores the foundation of our federal framework. To paraphrase Justice Brandeis, our states are laboratories of democracy, and each state may create, test, and interpret its own laws within certain limits in our democratic system.[2] Dr. Carrier has presented no evidence that the two savings statutes serve the same purpose. Rather, each state is entitled to its own interpretation of its own savings statute. Whether they may both save some cases is irrelevant; the Missouri statute does not save this case and Missouri law governs.

Ohio law cannot be constitutionally applied to these Defendants. The U.S. District Court for Southern District of Ohio found that Skepticon and Ms. Lane did not have sufficient minimum contacts with Ohio. This was primarily because they were not aware that Carrier had left California, and thus there was no activity in Ohio nor any express aiming at Ohio. Why would Ohio law apply to Missouri citizens commenting on someone they believed to be in California? It

---

[2] *New State Ice Co. v. Liebmann*, 285 U.S. 262, 311(1932)("It is one of the happy incidents of the federal system that a single courageous State may, if its citizens choose, serve as a laboratory; and try novel social and economic experiments without risk to the rest of the country.")

2

would make no greater sense to apply Ohio law than to simply pick any one of the 50 states' laws and apply it here.

The conclusions of the Ohio court, foreclosing the use of Ohio law and jurisdiction, are final. Plaintiff did not appeal the Ohio dismissal, and thus is estopped from contesting its legal and factual findings. *See, e.g., U.S. v. Mendoza*, 464 U.S. 154, 158 (1984) (*citing Montana v. U.S.*, 440 U.S. 147, 153 (1979)). Plaintiff offers no explanation whatsoever as to how applying the Ohio Statute to the instant case would comport with due process or Missouri's choice of law principles. Thus, only the Missouri Savings Statute could reasonably apply.

Even if Ohio law could theoretically be applied, Missouri's "most significant relationship" factors show that Missouri law still applies.[3] Dr. Carrier does not dispute that the second factor (place where the conduct causing the injury occurred) and the fourth factor (place where the relationship between the parties is centered) weigh in Defendants' favor. The statements in the Blog Post were made in Missouri, and the place where the relationship of the parties is centered is Missouri.

Regarding the first factor (place where the injury occurred), Dr. Carrier argues that the Defendants' belief that Dr. Carrier resided in California at the time Skepticon published the Blog Post is irrelevant, because he actually resided in Ohio and had business relationships in Ohio. However, as the Southern District of Ohio found:

> Here…the statements were published outside of Ohio on social media and blog networks about activities that occurred outside of Ohio. Although one of the incidents that Plaintiff himself blogged about did occur in Ohio, there is no indication that any of the events discussed in the allegedly defamatory statements occurred in Ohio…. In other words, Ohio was not the "focal point" of the posts. Also, … here, Plaintiff's reputation is not centered in Ohio. Plaintiff avers that he gives speeches and attends events throughout the United States. … Here, the only connection to Ohio is Plaintiff's residence, which was established, at most, a few weeks before the allegedly defamatory statements were made.

---

[3] *See Thompson by Thompson v. Crawford*, 833 S.W.2d 868, 870 (Mo. 1992) citing Restatement (Second) of Conflicts of Laws § 145; *see* also Defendant's Mot. to Dismiss at 6 and Plaintiff's Resp. at 9.

*Carrier v. FreethoughtBlogs Network Opinion* (ECF No. 6, Ex. 3), at 22-23 (Nov. 14, 2018). Because this issue was actually litigated in Ohio, decided against Dr. Carrier, and essential to the Ohio Court's dismissal, Dr. Carrier is estopped from asserting that the place where the injury occurred is Ohio. *See B&B Hardware, Inc. v. Hargis Indus.*, 912 F.3d 445, 452 (8th Cir. 2018) (setting forth the factors). Moreover, the actual statements in the Blog Post pertain to a Missouri conference that takes place in Missouri every year, meaning that any injury to Dr. Carrier's nationwide reputation[4] would primarily be felt in Missouri. Last, the domicile of the two Defendants (Skepticon and Ms. Lane) are both in Missouri. Thus, weighing all the factors, the most significant relationship between the parties mandates Missouri law applying to this action.

## 2.2    The Missouri Savings Statute Does Not Save Plaintiff's Untimely Claim and Equitable Tolling Does Not Apply

The U.S. Court of Appeals for the Eighth Circuit has held that the Missouri Savings Statute "applies ***only*** to cases originally filed in Missouri." *See Mizokami,* 798 F.2d 1196 (8th Cir. 1986) (emphasis added). This is valid, binding case law, and no case holds otherwise.

Plaintiff argues that this Court should set "[p]recedents aside" (Resp. at 1) and asks this Court to apply the reasoning of the *dissenting* opinion in *Muzingo v. Vaught*, 887 S.W.2d 693, 697 (Mo. Ct. App. 1994), or otherwise look to examples of other savings statutes, from other states, cited in *Muzingo* that do preserve lawsuits originally filed in other states. Resp. at 8. However, as the *Muzingo* court notes, its interpretation of the Missouri Savings Statute actually, "follow[s] the majority of states which have addressed the issue" and comports to the actual text of the Missouri Savings Statute, which states that, "the first action shall have been commenced within the times respectively *prescribed*[]" *Muzingo* 887 S.W.2d at 697 (emphasis in the original). The *Muzingo* court specifically found that timely filing in another state does not comport with the Missouri Savings Statute, because Missouri statutes of limitations, "do not have extraterritorial

---

[4] *See* Comp. at ¶ 15.

4

effect".[5] *Id.* There is not valid basis to deviate from decades of precedent or from the actual text of the Missouri Savings Statute. Thus, the Court should dismiss Plaintiff's case as untimely.

Equitable tolling also does not apply because Plaintiff was not prevented from obtaining vital information regarding the existence of his claims. He was well aware of the jurisdictional and limitations issues before the Missouri time limit ran; and there was no fraudulent concealment or extraordinary circumstance. Instead, Plaintiff attempts to distinguish his case by selectively pointing to certain facts and reasoning in *King v. Nashua Corp.*, 763 F.2d 332 (8th Cir. 1985). However, the portion of the *King* case that Dr. Carrier cites explains that:

> The plaintiff cannot relate back her Missouri filing to her Illinois filing through the Missouri non-suit statute § 516.230 R.S.Mo., since it requires the original suit to be filed within the appropriate statute of limitations. Nor will the Missouri statute of limitations be tolled by the Missouri non-suit statute, since the plaintiff did not file in Illinois by innocent mistake or good faith. *See Phillips v. Whittom*, 354 Mo. 964, 192 S.W.2d 856, 857 (Mo. 1946). On the contrary, in the instant case, plaintiff clearly intended to institute the action in Illinois, possibly to forum shop.

Dr. Carrier argues that his case should be tolled because he filed his case in Ohio by innocent mistake or good faith and that he was not "grossly negligent." He argues that it was unduly burdensome to be required to file multiple lawsuits and that as an Ohio citizen it was reasonable to file his case in Ohio. However, Dr. Carrier is not being completely forthcoming. Carrier was aware that he could have filed his case against all the Defendants in the single forum of California, "where Defendants believed Carrier lived at the time they published their allegedly defamatory statements, and where the anticipated 30(b)(6) witness for Skepticon, Inc. is physically located" they would not have contested jurisdiction. *See* Dkt. No. 6-2 at 15. In fact, all of the defendants were estopped from arguing against jurisdiction in California, as their arguments in favor of dismissal in Ohio admitted to California jurisdictional facts. *See Mendoza*, 464 U.S. at 158. Further, there is no basis for the proposition that a plaintiff who claims he was defamed by multiple authors and publishers, through separate publications, should not file separate suits; those from

---

[5] Similarly, Plaintiff provides no basis for this court to hold that the Ohio savings statute has extraterritorial effect.

one state are not indispensable parties regarding claims against those in another state. Thus, Dr. Carrier had no good faith basis not to file in Missouri in a timely manner.

Dr. Carrier *clearly intended* to institute his action in Ohio, thus, there was no innocent mistake. Further, he clearly chose Ohio as a forum shopping exercise. As the *King* court notes, *the mere possibility of forum shopping* is likely enough to show that Plaintiff did not act in good faith. Taking Carrier at his word as to the burden of suing all defendants in separate courts, Dr. Carrier could have filed his action in California – where all of the defendants in the Ohio action admitted they believed him to live – and where they argued the brunt of his harm was felt given that he lived in California for many years and had only allegedly lived in Ohio a few weeks. Dkt. No. 6-2, generally, and Dkt No. 6-3 at 27.

But Carrier is no fool. He avoided filing in California then, because he would have been subject to an anti-SLAPP motion had he done so, an issue raised in the Ohio litigation. *See Carrier v. FreethoughtBlogs Network,* Case No. 2:16-cv-906 (S.D. Ohio July 5, 2018) (Defendants' Opposition to Dr. Carrier's Motion for Equitable Tolling), attached as **Exhibit 1.** As further evidence of his forum shopping, Dr. Carrier never sued Skepticon's Director, Rebecca Hammond, a resident of California and Skepticon's 30(b)(6) witness, despite the fact that she could be liable for Skepticon's speech and provided declarations in the Ohio Suit. *See id. at 4*. And tellingly, Dr. Carrier never sued California attorney Harmeet Dhillon for the content of the Attorney Letter. *See* Comp. at 1-2 at 4. The California Anti-SLAPP statute has clearly done its job, because it would have provided rapid dismissal and a shifting of attorneys' fees. Defendants are unfortunate in that Missouri has not yet enacted this tort reform measure, and thus the shopping continues.

Since the mere possibility of forum shopping, as articulated in *King*, is enough to show that a party has unclean hands and has acted in bad faith, Dr. Carrier is not entitled to equitable relief.

**3.0     Dr. Carrier's Defamation Claim Regarding the Blog Post Is Not Plausible**

While Dr. Carrier's claims are time barred, even if the Court considers them on their merits, they fail as a matter of law. Dr. Carrier does not dispute that Defendants cannot be liable for attorney Dhillon's response letter to Plaintiff's cease-and-desist letter (the "Attorney Letter"). *See*

6

Mot. to Dismiss at 13.  Dr. Carrier also does not dispute that Defendants cannot be liable for intentional infliction of emotional distress ("IIED") or negligent infliction of emotional distress ("NIED").  *Id.* at 14.  Thus, all claims in regard to the Attorney Letter and Dr. Carrier's claims for IIED and NIED should be dismissed with prejudice, leaving only Dr. Carrier's claims that several statements in the June 20, 2016 blog post (the "Blog Post") are defamatory.

Plaintiff appears to concede that he is a public figure (Opposition at 1), and does not argue otherwise.  Plaintiff's defamation claim regarding the Blog Post is implausible because he failed to allege facts plausibly showing that the Defendants acted with actual malice.  Although Dr. Carrier spends most of his Response arguing his version of the story behind the Blog Post, his interpretation of the underlying facts enjoys no deference at all, for whether a communication is defamatory is a question of law.  *See Draper v. City of Festus*, No. 4:11cv1652 TCM, 2013 U.S. Dist. LEXIS 148122, at 57 (E.D. Mo. Oct. 15, 2013) ("To decide whether, as a matter of law, an allegedly defamatory statement is reasonably capable of a defamatory meaning, the allegedly defamatory words must be stripped of any pleaded innuendo…and construed in their most innocent sense and then the words 'must be considered in context, giving them their plain and ordinarily understood meaning.'"), *citing Nazeri v. Mo. Valley Coll.*, 860 S.W.2d 303, 311 (Mo. 1993) (internal citations omitted).  Thus, this Court must specifically look to the statements themselves.

Dr. Carrier claims the entire Blog Post is defamatory, but that he takes greatest issue with two main statements.  *See* Opposition at 3.  They (and the blog post by extension) are not defamatory as a matter of law.

The first statement that Dr. Carrier particularly takes issue with is, *"[w]hile he was a featured speaker for many years, we stopped inviting him to speak partly because of his repeated boundary-pushing behavior, including towards someone at Skepticon."*  *See* Comp. at 6. Specifically, Dr. Carrier focusses on the word "repeated".  Opposition at 3.  The word "repeated" is factually true, while the words "boundary-pushing behavior" are statements of opinion.  Even *ignoring* all of Carrier's statements under oath and looking *only* at the admissions Dr. Carrier

7

makes in his Complaint, Dr. Carrier's admissions about his behavior at Skepticon compel dismissal.

The word "repeated" means "more than once." Dr. Carrier states that he cheated on his wife with Ms. Lane, then "broke up with Lane" after the fact, and then many months after he allegedly "broke up" with Ms. Lane, he admits he sent a salacious message to Ms. Lane. *See* Comp. at 8. Dr. Carrier further admits that after he sent Ms. Lane the "salacious message," that he was openly affectionate with other women (indicating multiple) at the Skepticon 2013 conference. *See* Comp. at 8-9 (¶ 33). Sending a salacious message to a conference organizer and being openly affectionate with multiple women who were attending the conference is an admission that Dr. Carrier engaged in repeated behavior of a sexual nature. Nothing about the word "repeated" in the full statement, says that the repeated behavior was with the same person. While Dr. Carrier may have his own interpretation regarding the word "repeated" to describe his behavior, he admits the conduct occurred on more than one occasion, rendering the statement true.

Skepticon's use of the subjective phrase "boundary-pushing behavior" to describe Dr. Carrier's admitted sexual behavior is opinion protected by the First Amendment. Dr. Carrier points to no objective set of "boundaries"; rather, the statement represents the subjective judgment of the author. Thus, it is not actionable defamation. *See, e.g., Gertz v. Welch*, 418 U.S. 323, 339-340 (1974). As long as someone might consider this kind of sexual activity to be "pushing" any boundary at all, it is "boundary pushing behavior."

Dr. Carrier also takes particular issue with the first part of the sentence that states that Skepticon "stopped inviting [Dr. Carrier] to speak *partly* because of" the sexual behavior described above. (emphasis added). Dr. Carrier argues that this statement is defamatory because Dr. Carrier's admitted sexual behavior occurred in 2013, but Skepticon had still invited Dr. Carrier to speak in 2014. As a result, Dr. Carrier claims that the statement is false. Nowhere in the statement does it say that the behavior was a "but for" cause. The word "partly" discloses that

there are additional, unstated, reasons why Skepticon stopped inviting Dr. Carrier to speak.[6] Thus, he has not alleged falsity with actual malice. Further, it is not plausible to sustain a defamation claim (much less by a public figure) on the basis of a statement like this. Carrier's view appears to be "*I did something in 2013, Skepticon invited me in 2014, and thus there is no way that in 2016, Skepticon could have looked at my behavior again, or my new behavior, and concluded that I have boundary issues*." Moreover, by Dr. Carrier's own admission in his Complaint, Skepticon *specifically disinvited* Dr. Carrier *from speaking* in 2014. *See* Comp. at 9. He cannot now contradict his own pleading in an attempt to save this SLAPP suit.

The last statement that Dr. Carrier alleges is defamatory is: "*What has been made clear by the recent discussions is that our attendee's well-being and comfort is put at an unacceptable risk by Carrier's presence, and so we are officially prohibiting Richard Carrier from attending any future Skepticons.*" *See* Comp. at 6. Dr. Carrier highlights that he particularly takes issue with the words "put at an unacceptable risk." *See* Resp. at 3. Dr. Carrier argues that "risk" cannot be established because he claims he did not violate Skepticon's policies, including its sexual harassment policy. *See* Opposition at 3, 4, and 11. However, "[t]he word 'risk' thus implies that an opinion is being uttered." *Riblet Tramway Co. v. Ericksen Assocs., Inc.*, 665 F. Supp. 81, 85 (D.N.H. 1987). And it is an opinion based on disclosed facts. Dr. Carrier's insistence that he did not violate Skepticon's sexual harassment policy is irrelevant because looking at the Blog Post as a whole, Skepticon did not state that their attendee's well-being and comfort is at risk because Dr. Carrier violated their sexual harassment policy.[7] Rather, the Blog Post says that Skepticon formed

---

[6] Dr. Carrier also argues that the other allegations of sexual harassment, such as the published statements from the ASU student and from the blogger at The Orbit, could not have played any part in Skepticon's past decision to stop inviting him, because these allegations did not come to light until later. *See* Opposition at 13. This argument is immaterial as the other statements are not referenced in the Blog Post.

[7] It is true that Skepticon does provide a link to its sexual harassment policy at the bottom of the Blog Post, which states: "Our harassment policy can be found here. We are currently refining our method of handling such complaints so as to be as effective as possible when faced with them." However, inclusion of this link at the bottom of the Blog Post in no way indicates that Dr. Carrier violated their sexual harassment policy. If anything, a plain reading indicates that Skepticon was working to refine the policy to make it better for their attendees.

9

its opinion, that their attendee's well-being and comfort is at risk if Carrier attends, based on their "recent discussions." Thus, the statement that the attendee's well-being and comfort are put at risk by Dr. Carrier's presence is a statement of opinion based on the disclosed facts of Skepticon's discussions. The First Amendment protects this statement of opinion, and Defendants are not liable for this statement or any other in the Blog Post.

**4.0      Conclusion**

For the foregoing reasons, Plaintiff's complaint should be dismissed with prejudice.

Dated this 19th day of July 2019.          Respectfully Submitted,

RANDAZZA LEGAL GROUP, PLLC

/s/ Ronald D. Green
Ronald D. Green, *pro hac vice*
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117
Phone: (702) 420-2001
ecf@randazza.com

THOMPSON COBURN LLP
Michael L. Nepple, MO 42082
Jonathan G. Musch, MO 55200
One U.S. Bank Plaza, Suite 2700
St. Louis, Missouri 63101
Phone: (314) 552-6000
mnepple@thompsoncoburn.com
jmusch@thompsoncoburn.com

*Attorneys for Defendants*
Skepticon, Inc. and Lauren Lane

Case No. 4:19-cv-01059-JCH

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 19, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which shall serve a copy on all counsel of record who are deemed to have consented to electronic service. I further certify that a true and correct copy of the foregoing document is being served via First Class Mail and email upon:

Richard Carrier
134 West Tulane Rd. Apt. B
Columbus, OH 43202-1943
<Richard.carrier@icloud.com>

Respectfully Submitted,

/s/ Ronald D. Green
Ronald D. Green